# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

BONNIE M. O'DANIEL                          CIVIL ACTION

VERSUS

NO. 17-190-RLB

INDUSTRIAL SERVICE SOLUTIONS,
ET AL.

CONSENT CASE

## ORDER

Before the Court is Defendants' Motion to Dismiss with Prejudice (R. Doc. 23) filed on 28, 2017. The motion is opposed. (R. Doc. 30). Defendants filed a Reply. (R. Doc. 31). Plaintiff filed a Sur-Reply. (R. Doc. 38).

Also before the Court is Plaintiff's Motion for Leave to File Plaintiff's Second Amended Complaint (R. Doc. 29) filed on October 3, 2017. The motion is opposed. (R. Doc. 32).

Because the foregoing motions concern related issues, the Court considers them together.

## I. Background

On March 27, 2017, Bonnie O'Daniel ("Plaintiff") commenced this action *pro se*, alleging, among other things, that she was improperly terminated from her employment. (R. Doc. 1). Plaintiff named as defendants Industrial Service Solutions ("ISS"), Plant-N-Power, Services, Inc. ("PNP"), Cindy Huber, and Tex Simoneaux, Jr. (collectively, "Defendants").

On August 14, 2017, Plaintiff, still proceeding *pro se*, filed an Amended Complaint. (R. Doc. 18, "Am. Compl."). In Paragraph 1 of the Amended Complaint, Plaintiff asserts that she seeks recovery under various federal and state statutes for (1) discrimination based on sex, (2) reverse discrimination based on retaliation, (3) discrimination based on gender, (4) defamation, (5) disparate treatment, and (6) intentional infliction of severe emotional distress. (Am. Compl. ¶

JURY

1). According to Plaintiff, her employment with PNP, whose parent company is ISS, was terminated on June 21, 2016 by Mr. Simoneaux. (Am. Compl. ¶ 12). Plaintiff alleges that her employment was terminated because she posted on her Facebook page a photograph of a man wearing a dress at Target store and commented on his ability to use the women's restroom and/or dressing room with her daughters. (Am. Compl. ¶ 23).[1] Plaintiff alleges that Ms. Huber, the president of PNP and member of the LGBT community, took offense at the posting and suggested that she be fired immediately. (Am. Compl. ¶¶ 17, 23).

On August 28, 2017, Defendants filed their motion to dismiss. (R. Doc. 23). Defendants seek dismissal of the claims raised in the Amended Complaint on the following bases: (1) Plaintiff's discrimination claims fail because individual defendants are not proper parties under federal or state law, Plaintiff failed to administratively exhaust her discrimination claims under federal and state law, and Plaintiff failed to allege a discriminatory act taken against her due to her sex or gender; (2) Plaintiff's retaliation claim fails because individual defendants are not proper parties under federal or state law and Plaintiff failed to plead any protected activity necessary under Title VII; (3) Plaintiff's defamation claim fails because Plaintiff has not alleged any non-privileged false and defamatory statement made about her by any Defendant; and (4) Plaintiff's intentional infliction of emotional distress claim fails because the allegations do not rise to the necessary level to sustain the claim. (R. Doc. 23 at 1-2, R. Doc. 23-1). Defendants further submit that any further amendment would be futile and dismissal should be entered with prejudice. (R. Doc. 23 at 2, R. Doc. 23-1 at 19).

---

[1] Plaintiff specifically acknowledges in the Amended Complaint that she "made a Facebook post that ultimately led to her dismissal." (R. Doc. 18 at 4). Defendants submitted a purported copy of Plaintiff's Facebook post, which states the following: "So meet, ROBERTa! Shopping in the women's department for a swimsuit at the BR Target. For all of you people that say you don't care what bathroom it's using, you're full of shit!! Let this try to walk in the women's bathroom while my daughters are in there!! #hellwillfreezeoverfirst." (R. Doc. 23-1 at 21).

On September 15, 2017, counsel enrolled on behalf of Plaintiff. (R. Docs. 25, 26).

On October 3, 2017, Plaintiff filed her motion to amend (R. Doc. 29). Also on October 3, 2017, Plaintiff filed her Opposition to the Motion to Dismiss. (R. Doc. 30).

Plaintiff's proposed Second Amended Complaint seeks to amend Paragraph 1 of the Amended Complaint by asserting the following three claims in place of the original six claims: (1) "The Defendants retaliated against Plaintiff by terminating her for exercising her constitutionally protected right to freedom of expression, in violation of La. Const. Art. 1 § 7"; (2) "The Defendants conspired with others to invade Plaintiff's constitutional right to privacy, in violation of La. Const. Art. 1 § 7"; and (3) "The Defendants retaliated against Plaintiff by terminating her in part due to her opposition to the Defendants' practice of sex discrimination (*i.e.*, informing Defendants that she intended to file a formal complaint of sex discrimination), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a)." (R. Doc. 29-2 at 1-2). Plaintiff also seeks to allege various additional factual allegations and to modify her prayer for relief. (R. Doc. 29-2 at 2-9).

Plaintiff's Opposition to the Motion to Dismiss is likewise limited to addressing the viability of these three claims. (R. Doc. 30).

In light of the foregoing modification of the claims in Paragraph 1 of the Amended Complaint, Defendants argue in support of their motion to dismiss that Plaintiff has abandoned her discrimination, defamation, disparate treatment, and intentional infliction of emotional distress claims as asserted in the Amended Complaint. (R. Doc. 31 at 1). Defendants also argue that Plaintiff's proposed claims for right to privacy, right to free expression, and retaliation are futile. (R. Doc. 32; *see* R. Doc. 31 at 2-5). In opposition to Defendants' motion to dismiss, Plaintiff argues that her proposed claims for right to privacy, right to free expression, and

3

retaliation are viable, but does not raise any argument in support of a finding that her original six claims survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (R. Doc. 30). Plaintiff subsequently withdrew her proposed claim for right to privacy, but maintains that her proposed claims for right to free expression and retaliation are viable. (R. Doc. 38).

Given the foregoing, there is no dispute that the Plaintiff is now only seeking to allege a freedom of expression claim under Article 1, Section 7, of the Louisiana Constitution, and a retaliation claim under Title VII. Plaintiff contends that she states a valid claim for retaliation in violation of her right to freedom of expression because the Louisiana Constitution provides a remedy for retaliation to private employees, and her Facebook post touched upon a matter of public concern. (R. Doc. 30 at 5-7). Plaintiff contends that she states a valid claim for retaliation under Title VII because she engaged in "protected activity" by asserting that she would file a formal complaint, and later filed a charge with the EEOC, regarding Defendants' unlawful practice of discrimination, and Defendant engaged in an "adverse employment action" by terminating her employment. (R. Doc. 30 at 7-8).

Defendants argue that Plaintiff's freedom of expression claim is futile because Defendants are private actors, not state actors or otherwise acting under the color of state law. (R. Doc. 32 at 4-6; R. Doc. 31 at 2-4). Defendants argue that Plaintiff's Title VII retaliation claim is futile because Title VII does not protect complaints concerning harassment based upon a non-protected characteristic such as sexual orientation. (R. Doc. 32 at 6-10; R. Doc. 31 at 4-5). Finally, Defendants contend that Plaintiff has failed to demonstrate how the individual defendants Cindy Huber or Tex Simoneaux, Jr. can be held liable under either claim. (R. Doc. 32 at 10).

In surreply, Plaintiff argues that her freedom of expression claim is viable because the protections provided by the Louisiana Constitution are broader than the U.S. Constitution and includes protection from private actors. (R. Doc. 38 at 1-3). Plaintiff further argues that with regard to her retaliation claim, she has demonstrated that she had a reasonable belief that the employer was engaged in unlawful employment practices. (R. Doc. 38 at 3-4). Finally, Plaintiff contends that she engaged in "protected activity" before her termination by asserting that she would file a formal complaint, although she did not file such a complaint until after her employment was terminated. (R. Doc. 38 at 4).

## II.     Law and Analysis

### A.     Legal Standards

Under Rule 15, after the period for amending as a matter of course elapses, "a party may amend its pleading only with the opposing party's written consent or the court's leave" and a "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The rule "evinces a bias in favor of granting leave to amend." *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S.A. Co.*, 195 F.3d 765, 770 (5th Cir. 1999) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981)). Although leave to amend should not be automatically granted, "[a] district court must possess a substantial reason to deny a request for leave to amend[.]" *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quotations omitted). The Court may consider several factors when determining whether to grant leave to amend, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment. . . ."

*See Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1153 (5th Cir. 1981) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"It is within the district court's discretion to deny a motion to amend if it is futile." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000) (citations omitted). The "futility" of amendments to a complaint is measured by whether "the amended complaint would fail to state a claim upon which relief could be granted" under "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id*. at 873 (citations omitted).

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a Rule 12(b)(6) motion, a pleading's language, on its face, must demonstrate that there exists plausibility for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In determining whether it is plausible that a pleader is entitled to relief, a court does not assume the truth of conclusory statements, but rather looks for facts which support the elements of the pleader's claim. *Twombly*, 550 U.S. at 557. Factual assertions are presumed to be true, but "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678.

**B.  Analysis**

    **1.  Plaintiff's Discrimination, Defamation, and Intentional Infliction of Emotional Distress Claims in the Amended Complaint**

There is no dispute that Plaintiff is effectively seeking to abandon her claims for discrimination based on sex, reverse discrimination based on retaliation, discrimination based on

gender, defamation, and intentional infliction of severe emotional distress. These claims are not asserted in Plaintiff's proposed Second Amended Complaint. Furthermore, Plaintiff does not address the viability of any of these claims in her opposition to Defendant's motion to dismiss. (R. Doc. 30). In failing to address these claims, Plaintiff has not opposed the dismissal of those claims and the Court deems the Motion to Dismiss unopposed in that regard.

The Court also concludes that Plaintiff has voluntarily abandoned the foregoing claims. Based on the foregoing, the Court will dismiss Plaintiff's claims for discrimination based on sex, reverse discrimination based on retaliation, discrimination based on gender, defamation, and intentional infliction of severe emotional distress with prejudice.

### 2. Plaintiff's Proposed Right to Privacy Claim

Plaintiff has voluntarily withdrawn her proposed right to privacy claim asserted in her proposed Second Amended Complaint. (R. Doc. 38 at 1). Accordingly, the Court will deny Plaintiff's Motion to Amend to the extent it seeks to assert a claim for right to privacy under the Louisiana Constitution.

### 3. Plaintiff's Proposed Freedom of Expression Claim

In support of her proposed freedom of expression claim, Plaintiff argues that Article 1, Section 7, of the Louisiana Constitution provides "a remedy for retaliation to *private* employees, whereas the U.S. Constitution does not." (R. Doc. 30 at 6) (Plaintiff's emphasis). Plaintiff further argues that she engaged in protected speech on a matter of "public concern" that provides enhanced constitutional protection from the termination of her employment. (R. Doc. 30 at 6-7).

The Louisiana Constitution, in relevant part, provides the following: "No law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but is responsible for abuse of that freedom." La. Const. art. I, § 7.

"Louisiana's constitutional protection of free speech mirrors that of the First Amendment." *Heany v. Roberts*, 846 F.3d 795, 801 n.2 (5th Cir. 2017) (citing *Winn v. New Orleans City*, No. 12-1307, 2015 WL 10713690, at *5 (E.D. La. Jan. 14, 2015)). Both the state and federal constitutional provisions regarding freedom of speech protect against the establishment of laws limiting freedom of speech. *See* U.S. Const. amend. I; La. Const. art. I, § 7. It is well settled that the "First Amendment does not protect a person's right to private employment, but only affords rights to persons engaged in protected speech who suffer damages as a result of state action." *Walle v. Polymer Dev. Labs., Inc.*, No. 91-1415, 1991 WL 195492, at *5 (E.D. La. Sept. 23, 1991); *see Rendell–Baker v. Kohn*, 457 U.S. 830, 837 (1982) ("[I]t is fundamental that the First Amendment prohibits *governmental infringement* on the right of free speech.") (emphasis added); *cf. Baynard v. Guardian Life Ins. Co. of Am.*, 399 So. 2d 1200, 1202 (La. App. 1st Cir. 1981) (stating that Article 1, Section 3, of the Louisiana Constitution of 1974 "prohibits discrimination by laws, and plaintiff can point to no law which discriminates against him.").

Accordingly, Plaintiff's proposed freedom of expression claim under the Louisiana Constitution against Defendants, who are all non-governmental entities or individuals, is futile, as it does not state a claim upon which relief can be granted. Plaintiff has not demonstrated that Article 1, Section 7, of the Louisiana Constitution, which provides the same protections as the First Amendment of the U.S. Constitution, guarantees any protections from private sector entities or individuals imposing consequences against an employee under the instant circumstances.

To the extent Plaintiff is attempting to allege a wrongful discharge action on the basis that her actions constitute an exception to the at-will employment doctrine, the Court also finds that proposed claim to be futile. In relevant part, the Louisiana Supreme Court has described Louisiana's at-will employment doctrine as follows:

> The employer-employee relationship is a contractual relationship. As such, an employer and employee may negotiate the terms of an employment contract and agree to any terms not prohibited by law or public policy. When the employer and employee are silent on the terms of the employment contract, the civil code provides the default rule of employment-at-will. This default rule is contained in LSA-C.C. art. 2747.
>
> Under LSA-C.C. art. 2747, generally, an employer is at liberty to dismiss an employee at any time for any reason without incurring liability for the discharge. However, this right is tempered by numerous federal and state laws which proscribe certain reasons for dismissal of an at-will employee. For instance, an employee cannot be terminated because of his race, sex, or religious beliefs. Moreover, various state statutes prevent employers from discharging an employee for exercising certain statutory rights, such as the right to present workers' compensation claims. Aside from the federal and state statutory exceptions, there are no broad policy considerations creating exceptions to employment at will and affecting relations between employer and employee.

*Quebedeaux v. Dow Chem. Co.*, 820 So. 2d 542, 545-46 (La. 2002) (citations omitted).

Plaintiff relies on dicta found in a Louisiana appellate court decision in support of the proposition that an employee has a right of action against a private-sector employer when the employee is terminated for exercise of the constitutionally protected right of free speech. (R. Doc. 30 at 6). In that decision, the Louisiana Fourth Circuit broadly states, in dicta, that "[a]n employee cannot be terminated because of race, sex, or religious beliefs or because he/she *exercised constitutionally protected rights such as free speech*." *Wusthoff v. Bally's Casino Lakeshore Resort, Inc.*, 709 So. 2d 913, 914 (La. App. 4th Cir. 1998) (emphasis added). The Louisiana Supreme Court, makes clear that "[a]side from the federal and state *statutory exceptions*, there are no broad policy considerations creating exceptions to employment at will and affecting relations between employer and employee." *Quebedeaux*, 820 So. 2d at 546 (emphasis added) (citing *Gil v. Metal Service Corp.*, 412 So.2d 706 (La. App. 4th Cir. 1982)).[2]

---

[2] Indeed, the *Wusthoff* decision acknowledges that "[t]here are specific Louisiana statutes that set out employees' rights and prohibit employers from terminating employees because they exercise their right[s]." *Wusthoff*, 709 So. 2d at 914 (citing *Gil*, 412 So.2d 706). The earlier *Gil* decision by the Louisiana Fourth Circuit more specifically states that while "[c]ourts in many of the United States have held that an employee cannot be terminated for refusal

9

There is no dispute that Plaintiff was employed as an at-will employee by PNP. Plaintiff does not reference any decision, nor has the Court found any decision, specifically holding that at-will employees in Louisiana enjoy a private right of action against their private-sector employers when they are terminated for exercise of speech under Article 1, Section 7, of the Louisiana Constitution. This Court does not address Plaintiff's freedom to make such statements or the inability of the government to prevent them. At the same time, as an at-will employee, Plaintiff can be held responsible for the consequences of such statements in the private sector.

Other states with at-will employment and similar constitutional protections have refused to find such a right of action absent specific legislation. *See*, *e.g.*, *McGarvey v. Key Prop. Mgmt. LLC*, 211 P.3d 503 (Wyo. 2009) (refusing to recognize public policy exception to at-will employment with a private sector employer in light of free expression protections under state constitution providing that "[e]very person may freely speak, write and publish on all subjects, being responsible for the abuse of that right."); *Edmondson v. Shearer Lumber Prod.*, 75 P.3d 733 (Id. 2003) (same where state constitutional provides that "[e]very person may freely speak, write and publish on all subjects, being responsible for the abuse of that liberty." ); *see also Tiernan v. Charleston Area Med. Ctr., Inc.*, 506 S.E. 2d 578, 589-90 (W. Va. 1998) ("The prevailing view among the majority of courts addressing the issue is that state or federal constitutional free speech cannot, in the absence of state action, be the basis of a public policy exception in wrongful discharge claims.") (citing decisions).

Plaintiff does not reference any Louisiana statute providing Plaintiff a right of action for wrongful discharge based upon her state constitutional right of freedom of expression. The

---

to perform an illegal act, even in the absence of a statute . . . because of Louisiana's traditional and unique deference to legislative authority, these decisions cannot act as precedent. *Gil*, 412 So. 2d at 708.

10

Court will not recognize an exception to Louisiana's at-will employment doctrine in the absence of such legislation. *See Quebedeaux*, 820 So. 2d at 546; *Gil*, 412 So.2d at 708.

Accordingly, to the extent that Plaintiff is attempting to assert a wrongful discharge action against Defendants on the basis that her exercise of free speech constitutes a public policy exception to Louisiana's at-will employment doctrine, the Court concludes that the proposed amendment is futile.

### 4. Plaintiff's Retaliation Claim in the Proposed Second Amended Complaint

Title VII makes in unlawful for an employer to retaliate against an employee who engages in protected activity by opposing an employment practice made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, "a plaintiff must first show that (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action." *Feist v. Louisiana*, 730 F.3d 450, 454 (5th Cir. 2013).

To constitute protected activity, "a plaintiff's complaint — whether formal or informal — must still concern a discriminatory practice in order to form the basis of a retaliation claim under an anti-discrimination law." *Guillen v. Calhoun County*, No. 11-48, 2012 WL 1802617, at *3 (S.D. Tex. May 16, 2012). "Title VII does not protect opposition to all forms of unscrupulous conduct." *Brown v. United Parcel Service, Inc.*, 406 Fed. App'x 837, 840 (5th Cir. 2010). Instead, the Act only protects opposition to discrimination based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "Therefore, the relevant question is not whether a formal accusation of discrimination is made but whether the employee's communications to the employer sufficiently convey the employee's reasonable concerns that the employer has acted or is acting in an unlawful discriminatory manner." *Yount v. S & A Restaurant Corp.*, 226 F.3d 641,

11

at *3 (5th Cir. 2000); *see also Brown*, 406 Fed. App'x at 840 ("Magic words are not required, but protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue.").

There is no dispute that there can be no causal connection between Plaintiff's filing of a formal EEOC charge after her termination, and any alleged retaliation by the Defendants. Plaintiff argues, however, that the proposed allegations establish that she engaged in protective activity by informing Defendants that she would file a formal complaint regarding alleged discrimination against her prior to her termination. Paragraph 54 of the proposed Second Amended Complaint asserts that the "formal complaint was to include, among other things, allegations that Mrs. Huber discriminated against the Plaintiff on the basis of her sex, as a married, heterosexual female." (R. Doc. 29-2 at 5). Plaintiff argues that while the foregoing alleged discrimination based on her status as a "married, heterosexual female" may not be prohibited under Title VII, she formed a reasonable belief that such discrimination was prohibited as a form of sex discrimination. (R. Doc. 38 at 3-4).

"Title VII in plain terms does not cover 'sexual orientation'." *Stewart v. Browngreer*, 655 Fed. App'x 1029, 1031 n.1 (5th Cir. 2016) (quoting *Brandon v. Sage Corp.*, 808 F.3d 266, 271 (5th Cir. 2015). The Fifth Circuit has specifically held that discharge based upon sexual orientation is not prohibited by Title VII. *See Blum v. Gulf Oil Corp.*, 597 F.2d 936, 938 (5th Cir. 1979) ("Discharge for homosexuality is not prohibited by Title VII . . . ."). The Eleventh Circuit has also recently held that *Blum* is binding precedent, and that nearly all Circuits have held that sexual orientation discrimination is not actionable under Title VII. *See Evans v. Georgia Reg'l Hosp.*, 850 F.3d 1248, 1256 (11th Cir. 2017) (citing decisions from nearly all Circuits holding that).

12

While Plaintiff attempts to couch her retaliation claim in terms of "sex discrimination," she is in fact proposing to allege a claim for retaliation under Title VII on the basis that she reasonably believed that she could not be discriminated against based upon her sexual orientation as a heterosexual female. Nothing in Plaintiff's proposed allegations support a finding that she is seeking to allege that she faced discrimination on the basis of gender non-conformity, which may constitute sex-based discrimination. *See Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). It is unreasonable for Plaintiff to believe that discrimination based on her status as a married, heterosexual female constitutes discrimination on the basis of her sex. It is similarly unreasonable for Plaintiff to believe that discrimination based on sexual orientation constitutes protected activity. Based on the foregoing, the Court finds no basis for concluding that Plaintiff engaged in protective activity and/or was reasonably concerned that she engaged in protective activity. Accordingly, Plaintiff has not met the first prong for establishing a prima facie case of retaliation under Title VII.

Furthermore, even if Title VII did offer protection regarding sexual orientation discrimination, Plaintiff does not allege, or propose any allegations, indicating that Defendants terminated her because of her sexual orientation. At most, Plaintiff alleges that Ms. Huber was offended by Plaintiff's Facebook post posting, and ultimately directed Plaintiff's termination. Plaintiff does not specifically allege any instances in which Ms. Huber or any of the other Defendants discriminated against Plaintiff on the basis of her being a "married, heterosexual female" or otherwise made any references to her sex or sexual orientation in connection with her termination. The Amended Complaint likewise makes clear that Ms. Huber and the Plaintiff "had a great relationship before the [Facebook] incident" and that Ms. Huber was aware that Plaintiff was heterosexual, and "even sponsored Mrs. O'Daniel's daughter's softball team." (R.

Doc. 18 at 5). Accordingly, Plaintiff's assertion that she has a claim for retaliation based on unlawful acts regarding her sex or sexual orientation are conclusory and fail to state a claim upon which relief can be granted.

Finally, the Fifth Circuit has consistently held that "[i]ndividuals are not liable under Title VII in either their individual or official capacities." *Ackel v. National Communications, Inc.*, 339 F.3d 376, 381 (5th Cir. 2003) (citing *Smith v. Amedisys, Inc.*, 298 F.3d 434, 448-49 (5th Cir. 2002)); *Baldwin v. Layton*, 300 F. App'x 321, 323 (5th Cir. 2008); *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999)). Accordingly, Plaintiff's proposed retaliation claim under Title VII is also futile as to Cindy Huber and Rex Simoneaux, Jr., on the basis that they cannot be held liable as individuals.

### III. Conclusion

Based on the foregoing,

**IT IS ORDERED** that Defendants' Motion to Dismiss with Prejudice (R. Doc. 23) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Plaintiff's Second Amended Complaint (R. Doc. 29) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendants are **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on January 2, 2018.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**